## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## BEAUFORT DIVISION

| | | |
|---|---|---|
| PATRICIA A. MARTIN, | ) | |
| | ) | **C/A No.:** 9:18-cv-03476-DCN-MGB |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | **COMPLAINT** |
| | ) | |
| AMERICAN EAGLE OUTFITTERS, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## JURISDICTION AND PARTIES

1. This suit is brought and jurisdiction lies pursuant to the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §2000e *et seq.* and for racial discrimination under Title VII of the Civil Rights Act of 1964.

2. All conditions precedent to jurisdiction under §706 of Title VII, 42 U.S.C. §2000e-5 have occurred or been complied with.

   a. A charge of employment discrimination and retaliation on basis of racial discrimination was filed by the Plaintiff with the U.S. Equal Employment Opportunity Commission ("EEOC").

   b. Notification of the Right to Sue was received from the U.S. Equal Employment Opportunity Commission ("EEOC") on or about September 18, 2018.

   c. This Complaint has been filed within the 90 days of receipt of the EEOC's Notice of Right to Sue.

3. Plaintiff, Patricia A. Martin, is a citizen and resident of the State of Georgia, and resides in Savannah, Georgia.

4. All discriminatory employment practices alleged herein were committed within the State of South Carolina.

5. Defendant, American Eagle Outfitters, Inc., upon information and belief, upon information and belief, is a domestic corporation doing business in the County of Beaufort, State of South Carolina.

6. Defendant is a "person" within the meaning of §701 Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e.

7. Defendant is an industry that affects commerce within the meaning of the Civil Rights Act of 1964, 42 U.S.C. §2000e.

8. Defendant employs fifteen (15) or more employees and is an "employer" within the meaning of the Civil Rights Act of 1964, 42 U.S.C. §2000e.

9. The parties, matters and all things and matters hereinafter alleged are within the jurisdiction of the Court.

## STATEMENT OF FACTS

10. On or about April 12, 2014, the Plaintiff, an African American, began working for the Defendant, most recently as an Assistant Store Manager.

11. At all times, the Plaintiff was efficient and effective in her job.

12. That on or about December 11, 2015, Plaintiff tripped over a box in the back stockroom while she was carrying an arm full of merchandise.

13. Plaintiff sustained significant injuries to her right arm, foot, ankle, and her left knee.

14. Beginning in or about January 2017, Plaintiff contacted her direct supervisor and told her that she was to be late for work. Plaintiff arrived five (5) minutes late for work after giving her direct supervisor notice.

15. Plaintiff received a written warning even though she had never been warned before verbally.

16. Plaintiff conferred with another employee, who was white, and confirmed that she had not been written up even though she had been late repeatedly in the past.

17. Plaintiff also discussed the written warning with other store associates and determined there was a pattern. When white employees came in late, they were not written up.

18. The Plaintiff discussed the discrimination and disparate treatment with other managers.

19. Plaintiff was subjected to retaliation in or about March 2017 when she received another written warning after she had discussed the disparate treatment with other managers.

20. As Plaintiff's Workers' Compensation case progressed, she needed to take breaks or sit because of her foot and ankle swelling from standing on it. She was refused this request or made to feel bad about taking the break.

21. After the Plaintiff was cussed out by another employee in October 2017, she brought it to her supervisor's attention and was told that the problem would be addressed. Again, when white managers were treated poorly by staff, the staff was immediately disciplined.

22. When a staff meeting was held later that month, none of the discrimination issues were addressed nor was the co-worker spoken with for his negative behavior towards plaintiff.

23. Plaintiff kept having problems with her foot and the Defendant's continued to give her a hard time regarding her injury. Ms. Martin also had a difficult time getting approval for a second opinion and had to pay out of pocket to see a doctor who was not a covered doctor.

24. In or about November 2017, Plaintiff was told to resign from her management position and accept a demotion by her District Manager. Plaintiff refused. The District Manager indicated she would make it hard on the Plaintiff.

25. When Plaintiff had not stepped down from her managerial position by December 2017, she received yet another write up, this time by the District Manager.

26. Plaintiff continued enduring discrimination through conversations she had with other employees about inappropriate and discriminatory things being said about her causing the Plaintiff to resign due to the continued discrimination, disparate treatment, and inappropriate behavior towards her.

27. Defendant retaliated against Plaintiff for reporting the discriminatory acts and failed to stop the discrimination, disparate treatment, and inappropriate behavior, thereby creating a hostile work environment.

28. When the Plaintiff settled her Workers' Compensation claim, the Defendant's tried to make her also resign as a condition of settlement.

29. Plaintiff continued to be harassed and until she could no longer take it and was constructively discharged on March 18, 2018.

30. It was the duty of Defendants, by and through their agents, servants and/or employees, to prevent such acts of racial discrimination, disparate treatment, and inappropriate behavior from occurring and to stop it once the behavior had been reported by the Plaintiff.

## FOR A  FIRST CAUSE OF ACTION
## RACIAL DISCRIMINATION - Title VII

31. The Plaintiff reiterates and realleges each and every allegation as if fully set forth herein.

32. The Defendants stated reasons for preferential treatment were mere pretext for the discrimination against Plaintiff based on her race and association with African American coworkers.

33. The Defendant was wanton, reckless and intentional in the discrimination of the Plaintiff in the following particulars, to wit:

a. In failing to continue to employ Plaintiff due to her race or color and association with African Americans;

b. In showing preferential treatment by treating other non-African American with more favorable treatment; and

c. In demonstrating a pattern of discriminatory treatment towards African American by making disparaging remarks to those who were in a protected class.

34. In failing to protect the Plaintiff from racial discrimination or preferential treatment, the Defendant acted with malice or reckless indifference to the federally protected rights set out under Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. §2000e *et seq*.) and the Equal Employment Opportunity Act.

35. The Defendant violated Title VII of Civil Rights Act of 1964, as amended (42 U.S.C. §2000e *et seq*.), and the Equal Employment Opportunity Act by allowing the racial discrimination and preferential treatment to exist in the workplace.

36. The Plaintiff's race, color and association with African American persons were determining factors in the disparate treatment of the Plaintiff.  But for the Plaintiff's race, color and association with African American persons, she would not have been forced to resign.

37. As a direct and proximate result of the Defendant's discrimination on the basis of race, color, or association with an African American person, the Plaintiff has suffered a loss of wages, benefits, and employment opportunities.

38. The Defendant's discrimination against the Plaintiff has caused, continues to cause, and will cause the Plaintiff to suffer substantial damages for pecuniary losses, embarrassment, humiliation, pain and suffering, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

39. Due to the acts of the Defendant, its agents and employees, the Plaintiff is entitled to injunctive relief and/or civil damages, back wages, plus interest, payment for lost benefits, and reinstatement of benefits and front pay.

## FOR A  SECOND CAUSE OF ACTION
## WORKERS' COMPENSATION RETALIATION

40. Plaintiff reiterates and realleges each and every allegation as if fully set forth herein.

41. That on or about December 11, 2015, Plaintiff tripped while she was in the back stockroom and had an arm full of merchandise.

42. Plaintiff sustained significant injuries to her right arm, foot, ankle, and her left knee.

43. Plaintiff immediately notified her supervisor and filed a Workers' Compensation Claim.

44. That during the course of her treatment with her doctor, Plaintiff was given the approval to go back to work, but was ordered to take frequent breaks to prevent swelling in her foot and ankle.

45. That Plaintiff's Supervisor did not let Plaintiff take as many breaks as she needed or her doctor ordered her to take without receiving grief or made to feel bad about needing the break.

46. Additionally, Plaintiff needed time off for follow-up doctor's appointments and Plaintiff was made to feel bad and was given a hard time about asking for the time off.

47. Plaintiff's treatment, in fact, was retaliatory in nature for Plaintiff's requesting to file and filing a workers' compensation claim and the arbitrary and irrational reason given was pretextual, all in violation of the S.C. Code of Laws, §41-1-80, as amended.

48. The acts and conduct of the Defendant set forth above constitute a clear violation of public policy and were conducted in bad faith.

49. By reason of such wrongful and retaliatory treatment by Defendant, agents and employees, Plaintiff has been damaged in such an amount to be determined by the trier of fact.

## **REQUEST FOR RELIEF**

50. The Plaintiff reiterates and realleges the allegations set forth above, as if, fully stated herein verbatim.

51. Due to the acts of the Defendant, Plaintiff suffered great emotional and mental distress, fright, revulsion, disgust, humiliation, embarrassment, shock and indignities, lost wages, loss of front pay, back pay and other work benefits.

52. That by reason of such wrongful acts of the Defendant, the Plaintiff has been damaged in such an amount to be determined by the trier of fact.

WHEREFORE, Plaintiff prays for the following relief:

1. Judgment in favor of the Plaintiff and against Defendant for all causes of actions in an amount which is fair, just and reasonable, and for compensatory damages;

2. Prejudgment interest, costs and attorneys fees as may be allowed by law;

3. Judgment in favor of the Plaintiff and against Defendant with back pay and associated benefits she would have earned with all lost or diminished benefits, such date to be determined by the trier of fact;

4.    Judgment in favor of the Plaintiff and against Defendant for front pay and any other work benefits she lost in an amount to be determined by the trier of fact;

5.    Judgment in favor of the Plaintiff and against Defendant for pain and suffering, embarrassment and humiliation, and emotional distress in an amount to be determined by the trier of fact; and

6.    Judgment against Defendant, in such an amount of actual damages, punitive damages, attorney fees, costs of this action and any other relief this Honorable Court deems allowable under law, and just and proper.

**WIGGER LAW FIRM, INC.**

s/*Jarrel L. Wigger*
Jarrel L. Wigger (Fed. I.D. #6345)
Attorney for the Plaintiff
8086 Rivers Avenue
North Charleston, SC  29406
(843) 553-9800

North Charleston, South Carolina
_____ day of _____, 2018